UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 05-187 (ESH) |
| v. : | |
| : | |
| MARK L. CALLAHAM : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's motion to suppress physical evidence and statements. As grounds for this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a motions hearing.

**FACTUAL BACKGROUND**

On April 21, 2005, at approximately 10:05 p.m., Metropolitan Police Department officers were in the xxxx xxxxx xx xxxxxx xxxxx, x.x., Washington, D.C. At that time the officers observed a dark colored Chevrolet Tahoe, with Maryland license plates, traveling westbound. The officers noticed that the driver, later identified as Mark L. Callaham, was not wearing a seat belt.

The officers conducted a traffic stop. Officers spoke to the defendant, who was seated in the driver's seat. The defendant was asked to produce his driver's license. The defendant told the officers he had a driver's license but had left the license at home. As the officers were speaking to the defendant they noticed, in plain view, a clear plastic bag with a white substance in the rear floor console of the car.

The defendant was asked to exit the car, he complied, and officers conducted a protective search of the defendant. While conducting the protective search, one of the officers felt a hard metal object in the defendant's right waistband area. The officer thought that the hard metal object was a gun, handcuffed the defendant and retrieved a loaded Ruger 9mm semi-automatic pistol from the defendant's right waist band area. The defendant was arrested.

The defendant had $719.00 in U.S. Currency on him at the time of his arrest. The officers explained to the defendant his constitutional rights. After the officers explained to the defendant his constitutional rights he spontaneously stated "Man can't you just take that stuff and let me go?" "You've already got the gun just let me go."

The officers also retrieved from the automobile the clear bag containing the white substance. The white substance was field tested and gave a positive reaction for cocaine. On or about May 11, 2005, the DEA Mid-Atlantic Laboratory examined the contents of the clear white bag and concluded that it contained 7.2 grams of cocaine hydrochloride. On April 22, 2005, the Ruger 9mm semi-automatic pistol was test-fired and found to be operable.

## ANALYSIS

I.  **THE DEFENDANT WAS PROPERLY STOPPED FOR VIOLATING 18 D.C. CODE § 50-1802, AND THE OFFICER WAS JUSTIFIED IN SEARCHING THE DEFENDANT FOR HIS PROTECTION**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." This right is held to mean that searches and seizures conducted without judicial authorization are per se unreasonable, subject only to a few specially established and well delineated exceptions. One such exception is that recognized in Terry v. Ohio, 392 U.S. 1, (1968). According to Terry, when an officer observes

unusual conduct which leads him to reasonably conclude in light of his experience that criminal activity may be afoot, he may briefly stop the person and make reasonable inquiries to confirm or dispel his suspicions.

In this case, it was entirely lawful for the police to effect a traffic stop on the defendant's vehicle because the defendant was operating his motor vehicle without his seatbelt fastened, which is a violation of 18 D.C. Code § 50-1801. As a general matter, police may stop an automobile where the officer has probable cause to believe that a traffic violation occurred. United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996). See also United States v. Henderson, 229 F. Supp. 35, 40 (D. Mass. 2002) (a police officer personally observing a motor vehicle violation constitutes probable cause). Further, after the defendant was stopped he was asked to produce his driving credentials. The defendant told the officer that he did not have his driver's license in his possession, which is another motor vehicle violation in the District of Columbia. See 18 D.C. Code § 50-401.01. The legitimacy of the traffic stop does not turn on whether a "reasonable" officer could have stopped the car for the same violation, but whether there was a reasonable, legitimate basis to stop the car. Whren v. United States, 517 U.S. 806 (1996) (holding that sitting at a stop sign for more than 20 seconds and suddenly pulling off at an unreasonable speed without signaling were violations of D.C. civil traffic regulations that supported a traffic stop, without regard to whether a reasonable officer would have made such a stop or not). After stopping the vehicle, and learning that the defendant did not have his driver's license in his possession, the officer observed what he believed to be contraband, in plain view, in the back of defendant's motor vehicle. (See Government's Exhibits 1 and 2).

"A police officer who has legitimate contact with another person, and has reason to believe that person may be armed and dangerous, may conduct a pat-down search to protect officer safety,

regardless whether there is probable cause to arrest." United States v. Menard, 95 F.3d 9, 11 (8th Cir. 1996). In the instant case, the defendant committed a violation of law. The stop occurred after dark, in a high crime area. The defendant was physically substantially larger than the officer. Further, the defendant was transporting what appeared to be narcotics in plain view. Based on the foregoing, it was reasonable for the officer to conduct a pat-down of the defendant for his safety. See generally, United States v. Mclendon, 378 F.3d 1109, 1112 (D.C. Cir. 2004) ("this Circuit has frequently recognized that drugs and guns go together in drug trafficking"); see also United v. Price, 409 F.3d 436, 441 (D.C. Cir. 2005).

**II.     EVEN IF THE OFFICER DID NOT HAVE REASONABLE SUSPICION TO BELIEVE THE DEFENDANT WAS ARMED, BY THE TIME OF THE PLAIN VIEW SIGHTING OF THE CLEAR BAG CONTAINING A WHITE POWDER, THE OFFICERS HAD PROBABLE CAUSE TO ARREST DEFENDANT AND THE OFFICERS THEREAFTER WOULD HAVE INEVITABLY DISCOVERED THE GUN AS A LAWFUL SEARCH INCIDENT TO ARREST**

"In order to have probable cause for an arrest, law enforcement must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." United States v. Parra, 402 F. 3d 752, 763-764 (7th Cir. 2005). "The fact-intensive, on-the-spot determination of probable cause often involves an exercise of judgment, which turns on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." Id. at 764 ( citation omitted). "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." Id. (citation omitted). "A practical, nontechnical probability that incriminating evidence is involved is all that is required." Texas v. Brown, 460 U.S. 730, 742 (1986) (citation omitted).

Initially, the defendant committed two motor vehicle infractions. The white powder was less than four feet from the officer and clearly visible, because the defendant had lowered the windows and based on his experience and training the officer believed the white powder was contraband, likely cocaine. The cocaine weighed approximately one-quarter of an ounce. The cocaine was packaged in a manner consistent with it being illegal narcotics. The cocaine was in a clear baggie, with the top knotted, and there was nothing about the baggie which made it appear it was something else other than cocaine (i.e. the bag being labeled baking soda). The area where the defendant was stopped was a high crime area and the stop occurred late in the evening. Furthermore, the arresting officer is a seasoned police officer. He has participated in approximately 100 narcotics investigations in his almost four years as a police officer. He has observed the methods narcotics are packaged on numerous occasions during his law enforcement career, which the drugs in this case were consistent with, and he has been specifically trained in the manner and method that cocaine is packaged.

In Texas v. Brown, 460 U.S. 730, 733-34 (1983), during a traffic stop a police officer observed an opaque, green balloon, knotted about on half inch from the top, with white powder in it, in the defendant's hand. The officer knew from his previous experience that narcotics were packaged in balloons similar to the one he observed. Id. at 734. The defendant was arrested. Id. The Court concluded that the police officer "possessed probable cause to believe that the balloon in [the defendant's] hand contained an illicit substance." Id. at 742. The Court relied on the officer's experience with narcotics investigations and the manner the drugs were packaged to conclude that probable cause existed. Id. 742-43. Similarly, the officer in the instant case had probable cause to arrest the defendant. See also United States v. Jacobsen, 466 U.S. 109, 120 n. 17 (1984) ("Thus the

5

precise character of the white powder's visibility to the naked eye is far less significant than the facts that the container could no longer support any expectation of privacy, and that it was <u>virtually certain</u> that it contained nothing but contraband." (Emphasis added)); <u>United States v. Prandy-Birett</u>, 995 F.2d 1069, 1073 (D.C. Cir. 1993) ("If [defendant's] perfume bag held clear ziplock bags containing white powder, the detectives also would not have been sure whether he possessed cocaine or heroin (or some innocuous substance). <u>Yet that cannot be a reason for finding no probable cause</u>." (Emphasis added) <u>cert denied,</u> 510 U.S. 1167 (1994); <u>United States v. Sanchez</u>, 89 F.3d 715, 717, 720 (10th Cir.) (Where officer saw two bundles wrapped in duct tape and one of the bundles "appeared to have a white powdery substance in it," seizure of bundles supported by probable cause because "incriminating character was immediately apparent to officer").

Once the police officer had probable cause to arrest the defendant for possession of cocaine, the officers would have necessarily searched the defendant incident to arrest and inevitably found the loaded Ruger 9mm semi-automatic pistol from in the defendant's right waist band area. (<u>See</u> Government's Exhibit 3). In <u>New York v. Belton,</u> 453 U.S. 454 (1981), the Court expanded the authority of police officers to conduct searches incident to a lawful arrest when the arrestee is an operator of a motor vehicle. Further, in <u>United States v. Robinson</u>, 414 U.S. 218, 234 (1981) the Court stated "the justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into to custody as it does on the need to preserve evidence on his person for later use at trial." "To ensure an appropriate balance between privacy and law enforcement interests, particularly in light of the prophylactic sweep of an automobile search incident to arrest, we have held that the critical inquiry in such cases is whether the search is "roughly contemporaneous with the arrest." <u>United States v. McLaughlin</u>, 170 F.3d

889, 892 (9th Cir. 1999). See generally Nix v. Williams, 467 U.S. 431 (1984) (evidence which police inevitably would have discovered through independent lawful means need not be suppressed because an unlawful means turned up the evidence first); United States v. Cotnam, 88 F.3d 487, 495 (7th Cir.) ("We conclude, however, the searches that followed the viewing of the marijuana fall under the inevitable discovery rule."), cert. denied, 519 U.S. 942 (1996).

### III. THE STATEMENTS THE DEFENDANT MADE WERE NOT MADE BASED UPON CUSTODIAL INTERROGATION AN WERE VOLUNTARY

Once placed under arrest, the officer explained the defendant's constitutional rights. The defendant spontaneously stated "Man can't you just take that stuff and let me go?" And "You've already got the gun just let me go." This was not based on any words or actions by the officers, but entirely of the defendant's own volition.

The defendant's post-rights, post-arrest statements were made after he was properly Mirandized. Further, the defendant's statements were not based upon interrogation. The defendant, on his own initiative, made the inculpatory statement to the police officer. Under Miranda v. Arizona, 384 U.S. 436 (1966) police are required to give warnings to suspects about their Fifth Amendment rights before they are subjected to interrogation. In this case, the officers properly explained to the defendant his Miranda rights before he spontaneously made statements. Therefore, there was no violation of defendant's constitutional rights pursuant to Miranda.

Furthermore, not "all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." Rhode Island v. Innis, 446 U.S. 291, 299 (1980). "The fundamental import of the privilege [against self-incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and

counsel, but whether he can be interrogated." Id. (quoting Miranda, 384 U.S. at 478.) "The special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." Id. "Interrogation. . . must reflect a measure of compulsion above and beyond that inherent in custody itself." Id. For that reason, "Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent" and the words or actions of the police are such that "the police should know [they] are reasonably likely to elicit an incriminating response from the suspect." Id.

In the instant case, the defendant was not asked any questions by the officers or in any way enticed into making the statements. The content of the statement make it apparent that the statement was a thought of the defendant and not in response to a question. The defendant's statements were a plea to not arrest him. The content of the defendant's statement does not logically flow from a question, but is a plea for leniency. There was no physical force used or any outward displays of authority that indicated the defendant was being arrested. The defendant was properly Mirandized and was not interrogated when he volunteered the statement.

Under Fifth Amendment jurisprudence, the government must show that defendant's statements were voluntary. In considering a claim that a defendant's statements were involuntarily elicited, courts look to the totality of the circumstances to determine whether the defendant's will was overborne in such a way as to render his confession the product of coercion. United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991). Factors to consider in assessing the totality of the circumstances include the defendant's age, education and intelligence; whether the defendant has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged

nature of the questioning; whether the police or the accused initiated the dialogue; and the use of physical punishment, such as the deprivation of food or sleep. See Schneckloth v. Bustamonte, 412 U.S. 218 , 226 (1973).  The ultimate question is whether the suspect's "will has been overborne" by "coercive police activity""  Here, the defendant's statement was made, after he was explained his constitutional rights, and after a brief motor vehicle stop.  The government will establish, at the motions hearing, that the defendant's spontaneous statements, made after a brief encounter with police, and after properly Mirandized, were voluntary.  Accordingly, there was no Miranda violation and the statement was voluntary.

      WHEREFORE, the government respectfully requests that the defendant's motion to suppress evidence and statements be denied.

      Respectfully Submitted,

      KENNETH L. WAINSTEIN
      UNITED STATES ATTORNEY

      _____

      Anthony Scarpelli
      Assistant United States Attorney
      D.C. Bar Number 474711
      Narcotics Section
      555 4th Street, N.W. – Room 4816
      Washington, D.C. 20530
      (202) 353-1679

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of the foregoing Government's Opposition To Defendant's Motion To Suppress Physical Evidence ands Statements to be served upon the attorney for the defendant, Jenifer Wicks, Esquire, the Webster Building, 503 D Street NW, Suite 250A, Washington, DC 20001, this 6st day of September, 2005.

_____
ASSISTANT UNITED STATES ATTORNEY