**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. CR-05-187 (ESH)** |
| | : | |
| **MARCUS L. CALLAHAM,** | : | |
| **Defendant.** | : | |
| | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the Pre-Sentence Report.

## I.    BACKGROUND

On April 21, 2005, at approximately 10:05 p.m., Metropolitan Police Department officers were in the 2200 block of Hunter Place, S.E., Washington, D.C. At that time the officers observed a dark colored Chevrolet Tahoe, with Maryland license plates, traveling westbound. The officers noticed that the driver, later identified as Marcus L. Callaham, was not wearing a seat belt.

The officers conducted a traffic stop. Officers spoke to the defendant, who was seated in the driver's seat. The defendant was asked to produce his driver's license. The defendant told the officers he had a driver's license but had left the license at home. As the officers were speaking to the defendant they noticed, in plain view, a clear plastic bag with a white substance in the rear floor console of the car.

The defendant was asked to exit the car, he complied, and officers conducted a protective search of the defendant. While conducting the protective search, one of the officers felt a hard metal

object in the defendant's right waistband area.  The officer thought that the hard metal object was a gun, handcuffed the defendant and retrieved a loaded Ruger 9mm semi-automatic pistol from the defendant's right waist band area.  The defendant was arrested.

The defendant had $719.00 in U.S. Currency on him at the time of his arrest. The officers explained to the defendant his constitutional rights.  After the officers explained to the defendant his constitutional rights he spontaneously stated "Man can't you just take that stuff and let me go?" "You've already got the gun just let me go."

The officers also retrieved from the Chevy Tahoe the clear bag containing the white substance.  The white substance was field tested and gave a positive reaction for cocaine.  On or about May 11, 2005, the DEA Mid-Atlantic Laboratory examined the contents of the clear white bag and concluded that it contained 7.2 grams of cocaine hydrochloride.  On April 22, 2005, the Ruger 9mm semi-automatic pistol was test-fired and found to be operable.

On May 19, 2005, the defendant was charged in a two-count indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, and Simple Possession of a Controlled Substance (cocaine).  On November 28,  2005, a jury trial commenced before this Court.  On November 30, 2005, the jury convicted the defendant of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, and found him not guilty of Simple Possession of a Controlled Substance (cocaine).

## II.    SENTENCING CALCULATION

### A      Statutory Maximum

The defendant was found guilty by the jury of Unlawful Possession of a Firearm and

2

Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18, United States Code, Section 922(g)(1). The maximum sentence for Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year is ten years incarceration, a period of supervised release of not more than three years but not less than two years, and a fine in the amount of $250,000.

B.     Sentencing Guideline Calculation

The government agrees to the Guidelines calculations utilized in the Pre-Sentence Report ("PSR"), which correctly calculated the defendant's total offense level at 24. See PSR ¶ 19. The PSR also correctly calculated the defendant's criminal history as Category VI. See PSR ¶ 29. Therefore, the guideline range for the defendant is correctly calculated in the PSR as 63 - 71 months. See PSR ¶ 51. The PSR writer did not find factors indicating that a downward departure is warranted. See PSR ¶ 63. For the reasons set forth, infra Section III of this Memorandum, the government respectfully recommends that the Court sentence the defendant to **67 months**, which is the mid-range of the Guidelines as calculated in the PSR.

C.     The Impact of *Booker*

It is the government's position that the Court should impose a sentence within the 63 - 71 month guideline range. In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. Section 3553(b)(1). Booker, 125 S. Ct. at 756-57. However, the Court expressly refused to

invalidate the Guidelines in their entirety.  Id. at 764.  To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime.  Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines.  See 18 U.S.C. Section 3554(c)(2).  The sentence will then be subject to review by the court of appeals for "reasonableness."  Booker, 125 S. Ct. at 766.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines.  See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Pre-sentence Report or determine that resolution not necessary to sentencing).  "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  Booker at 767 (citing 18 U.S.C. Sections 3553(a)(4), (5) (Supp. 2004)).  In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se.  Not only is a sentence within the Guidelines range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.  Id.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress.  The Guidelines,

consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing. Such characteristics, which are articulated in 18 U.S.C. Section 3553(a), include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and] . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guidelines range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., Booker, 125 S. Ct. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); Id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); Id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); Id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant

benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guidelines range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See id. at 764. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) -- provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, but Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals for reasonableness review. See 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the Pre-

Sentence Report.

## III. DEFENDANT SHOULD BE SENTENCED AT THE MID-RANGE OF THE GUIDELINES.

In determining the appropriate sentence, the Court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. Section 3553(a)(2)(A). In this case, on April 25, 2005, the defendant was arrested for possessing a loaded Ruger 9mm caliber firearm. Prior to that incident, the defendant had been convicted of numerous criminal convictions, including disturbing the peace (where he threatened to shoot police officers with a gun), possession of cocaine (his probation was terminated unsatisfactorily), distribution of cocaine, possession with intent to distribute cocaine (he also possessed a loaded Glock 9mm handgun), and assault (the defendant assaulted police officers after causing a motor vehicle accident due to his intoxication and also had a quantity of crack on him).

The defendant was on probation with the State of Maryland at the time of this offense, and a according to probation a violation report will be filed. The defendant also is in violation of probation for driving under the influence of alcohol.

Clearly the defendant has no respect for the norms of society or citizens of this community. This is not the first time the defendant was arrested by police and armed with a loaded firearm. He was also armed with a firearm when he was arrested in 2003, when he was arrested for possession with the intent to distribute cocaine.

This represents the defendant's fourth felony conviction. It is vital that the Court send a message to both the defendant and the community that the repeated criminal acts, including

possession of guns in the community will not be tolerated. Moreover, the defendant committed the instant crime while on probation, and his conduct on probation was characterized as poor. Given the seriousness of the defendant's actions and the potential dangerous impact on the community, the government would recommend that the Court sentence the defendant to a period of incarceration at the mid-range of the Guidelines.

It is a bedrock principle in our criminal justice system that each person is responsible for his actions and, as a result, accountable for them. The defendant is no exception. Further, the fact that the defendant committed this instant offense while on probation is a clear indication as to how the defendant conducts himself in the community and his inability to conform to society's norms.

Accordingly, the government believes that a term of incarceration of 67 months, representing the mid-range of the prescribed Guidelines is appropriate.

## IV.    <u>CONCLUSION</u>

Wherefore, the government respectfully requests that the Court sentence the defendant to a term of incarceration of 67 months, representing the mid-range of the prescribed sentencing range of 63 - 71 months.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
ANTHONY SCARPELLI
Assistant United States Attorney
D.C. Bar No. 474711
Narcotic Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 353-1679

8

_____

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Richard Samad, Esquire, on this 27th day of February, 2005.


_____
ANTHONY SCARPELLI
ASSISTANT UNITED STATES ATTORNEY

9